UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re:<br><br>DON KARL JURAVIN,<br><br>    Debtor.<br>_____/<br><br>DON KARL JURAVIN,<br>Case No. 6:18-bk-06821-KSJ<br><br>    Applicable Debtor.<br>_____/<br><br>DENNIS D. KENNEDY,<br>AS CHAPTER 7 TRUSTEE OF THE<br>ESTATE OF DON KARL JURAVIN,<br><br>    Plaintiff,<br>v.<br><br>APRIL GOODWIN,<br>THE GOODWIN FIRM, P.A.,<br><br>    Defendants.<br>_____/ | Chapter 7<br><br>Case No. 6:18-bk-06821-KSJ<br><br>Case No. 6:20-bk-01801-KSJ<br><br>*Jointly Administered with*<br>Case No. 6:18-bk-06821-KSJ<br><br><br><br><br><br><br><br>Adv. Pro. No. _____ |

**COMPLAINT**

Dennis D. Kennedy, as Chapter 7 Trustee for the Estates of Don Karl Juravin ("Trustee"), through counsel, hereby files this Complaint to Avoid and Recover Fraudulent Transfers, Preferential Transfers, and Post-Petition Transfers, and for Turnover against April Goodwin and The Goodwin Firm (collectively, "Defendants") pursuant to 11 U.S.C. §§ 544, 547, 548, 549, and 550 and Chapter 726, *Florida Statutes* ("FUFTA"), and in support thereof, alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1334 and 157.

2. Venue is proper in this district under 28 U.S.C. § 1409.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A), (E), (F), and (H).

## BACKGROUND

### *The Debtor's Business Affairs.*

4. From 2009 through at least 2016, Debtor was an owner, officer, or representative of numerous entities, including without limitation, Roca Labs, Inc. ("Roca Labs"); Roca Labs Nutraceutical USA, Inc. ("RLN"); Must Cure Obesity, Co. ("MCO"); Juravin, Incorporated ("JINC"); and Zero Calorie Labs, Inc. ("ZCL") (collectively, the "Juravin Entities").

5. Debtor exercised authority and control over the Juravin Entities' advertising and sale of dietary supplements and food products, including the Roca Labs "Formula" and "Anti-Cravings" powder, to consumers throughout the United States, as a safe and cost-effective alternative to gastric bypass surgery to combat obesity and achieve substantial weight-loss.

6. Individual consumers paid the Debtor and/or the Juravin Entities hundreds of dollars for these worthless weight loss products which were nothing more than a fake medical regime purportedly designed to help consumers lose weight.

7. Debtor and the Juravin Entities intended to deceive consumers by marketing the weight-loss products so that the consumers would buy the weight-loss products and enrich the Debtor.

8. At all material times, acting alone or in concert with others, Debtor formulated,

directed, controlled, had the authority to control, or participated in the false advertising and other deceptive business practices perpetrated by the Juravin Entities.

9. Debtor and the Juravin Entities operated as a common enterprise while engaging in deceptive business practices and fraudulent activities.

10. Each of the Juravin Entities was created to further the deceptive and fraudulent weight-loss scam, or to conceal funds of the scam or of other scams created or perpetrated by the Debtor.

11. Each of the Juravin Entities was created, formed, and operated for an improper purpose.

12. At all times material hereto, Debtor had authority and control over the Juravin Entities.

13. At all times material hereto, the Juravin Entities were mere instrumentalities of the Debtor.

14. At all times material hereto, Debtor used the bank accounts of the Juravin Entities as his own personal piggy bank, and maintains control of the accounts of the Juravin Entities.

15. At all times material hereto, Debtor maintained control of the accounts of the Juravin Entities.

16. At all times material hereto, Debtor transferred substantial funds between and among the bank accounts of the Debtor and the Juravin Entities.

17. For example,[1] in the four-year period prior to the Juravin Petition Date the Debtor transferred the following:

---

[1] The specific transfers referenced in this paragraph and the following paragraph are meant as examples only. The Debtor failed to adequately respond to discovery in this case and the Trustee obtained a "break order" (Doc. No. 502) to gain access to the Debtor's electronic records. The Trustee has only recently obtained access to those records, which will likely disclose more transfers of this type.

    a. at least $2,202,915.58 from his personal accounts to accounts held by MCO;

    b. at least $2,833,206.28 from MCO's accounts to his personal accounts;

    c. at least $1,000,077.00 from MCO's accounts to RLN's accounts;

    d. at least $2,005,557.00 from his personal accounts to RLN's accounts;

    e. at least $587,392.15 from RLN accounts to the Debtor's personal accounts;

    f. at least $476,710.05 from the RLN accounts to MCO's accounts;

    g. at least $964,400.00 from his personal accounts to accounts held by RLN.

18. From November 1, 2012 to January 29, 2016, the Debtor transferred the at least $1,834,731.43 from RLN's accounts to his personal accounts, and at least $1,160,100.00 from RLN's accounts to RLN's accounts.

19. Due to the Debtor's intermingled accounts, and the extent of the transfers between and among such accounts, a transfer from an account associated with an Juravin Entity constitutes a transfer of property of the Debtor.

## PROCEDURAL HISTORY

### *The FTC Case.*

20. On September 24, 2014, the Federal Trade Commission ("FTC") filed a Complaint for Permanent Injunction and Other Equitable Relief, initiating case number 8:15-cv-02231, in the United States District Court for the Middle District of Florida ("FTC Case"), against Roca Labs; RLN; Don Juravin; and George C. Whiting, alleging claims for deceptive trade practices under Sections 5(a) and 12 of the Federal Trade Commission Act.

21. On February 19, 2016, the FTC filed an Amended Complaint to name additional defendants, MCO; JINC; and ZCL.

22. The FTC alleged that Debtor and his codefendants falsely or deceptively advertised

their weight-loss products, causing over $25 million in consumer injury.

23. The FTC also alleged Debtor and his codefendants unfairly used non-disparagement clauses in their sale terms for these products as part of their scheme, purporting to prohibit consumers from making truthful or non-defamatory negative comments or reviews about Debtor and his codefendants, their products, or their employees.

24. The District Court entered a temporary restraining order against Debtor and his codefendants to halt their fraudulent scheme, and later entered a preliminary injunction and asset freeze order.

25. In April 2018, the FTC moved for summary judgment against Debtor and his codefendants on all counts, including its claim for monetary relief.

26. Debtor, who was represented by counsel throughout the FTC Case, opposed the FTC's motion and moved for partial summary judgment solely on the unfair non-disparagement clause claim.

27. In September 2018, the District Court issued an order granting summary judgment to FTC on all counts as to liability, but requiring further briefing as to the amount of monetary relief.

28. The District Court denied Debtor's motion for partial summary judgment.

29. In the Summary Judgment Order, the District Court found that Debtor and his codefendants were liable for violating Sections 5 and 12 of the FTC Act because they:

   a. made false and unsubstantiated weight-loss claims about their products;
   b. falsely claimed that use of their products was scientifically proven to have a ninety-percent success rate in forcing users to eat half their usual food intake and cause substantial weight loss;

    c. deceptively failed to disclose their financial relationship to testimonialists who worked for them, and their control of a supposedly independent and objective information website that they used to promote their products;

    d. misrepresented the nature of that purportedly independent site;

    e. misrepresented that they would keep their customers' private health information confidential;

    f. misrepresented that consumers had agreed to non-disparagement clauses in exchange for a substantial discount on the products;

    g. unfairly suppressed negative information about Debtor and his codefendants and their falsely advertised products, to the detriment of subsequent purchasers, by making threats to sue, and filing of lawsuits against, dissatisfied consumers for violating non-disparagement clauses in their online sales contracts.

30. Further, the Honorable Mary Scriven of the United States District Court for the Middle District of Florida found Debtor jointly and severally liable with the Juravin Entities for their deceptive conduct because they operated as a common enterprise under his ownership and control, with common officers, business functions, employees, and office locations, he knew about the false and deceptive representations, he participated in the deceptive acts, and he had authority to control them.

31. On November 6, 2018, the District Court issued an order for $25,246,000 in monetary relief against Debtor and his codefendants.

32. On January 4, 2019, the District Court entered the Final Judgment against Debtor and the Juravin Entities in that amount and a permanent injunction ("FTC Final Judgment").

33. Following a trial conducted by this Court, the Court entered a Memorandum

Opinion on October 27, 2020 finding the Debtor intended to deceive his customers and finding the FTC Final Judgment non-dischargeable.

### *The Juravin Bankruptcy Case.*

34. On October 31, 2018, the Debtor, Don K. Juravin, filed this Chapter 7 bankruptcy case (the "Juravin Bankruptcy Case").

35. The Trustee was duly appointed as the Chapter 7 Trustee.

36. On September 16, 2019, the Juravin Bankruptcy Case was converted to Chapter 11 from Chapter 7, upon the Debtor's motion.

37. On March 16, 2020, after sustaining all objections to confirmation of the Debtor's proposed Chapter 11 plan and finding that the Debtor "is unable to articulate any reasonable way to succeed in [the] Chapter 11 case", the Court re-converted the case back to Chapter 7.

38. On October 5, 2020, the United States Trustee conducted a chapter 7 trustee election.

39. Trustee was duly elected as Chapter 7 Trustee.

### *The MCO Bankruptcy Case.*

40. On January 31, 2020, Must Cure Obesity, Co. filed a Chapter 11 bankruptcy case, case number 6:20-bk-1801 (the "MCO Bankruptcy Case").

41. On May 29, 2020, the MCO Bankruptcy Case converted from Chapter 11 to Chapter 7.

42. On May 29, 2020, Trustee was appointed as the Chapter 7 Trustee in the MCO Bankruptcy Case.

43. On November 19, 2020, the Court ordered the Juravin Bankruptcy Case and the MCO Bankruptcy Case to be jointly administered.

**FACTUAL ALLEGATIONS**

44. The Goodwin Firm's principal address is 801 W. Bay Drive, Suite 705, Largo, Florida 33770.

45. Ms. Goodwin is an attorney and the founder of The Goodwin Firm.

46. Ms. Goodwin has known the Debtor since approximately January 2015.

47. Ms. Goodwin first communicated with the Debtor after answering an online advertisement he placed on Craigslist seeking an attorney to represent him or one or more of his entities.

48. Defendants were then hired by the Debtor to perform legal services on his behalf.

49. Defendants performed legal services for Roca Labs.

50. Defendants performed legal services for MCO.

51. Defendants performed legal services for JINC.

52. Defendants performed legal services for RLN.

53. Defendants performed legal services for Anna Juravin.

54. Defendants performed legal services for United Medical Group International, Inc.

55. Defendants performed legal services for other entities of the Debtor.

56. On or about September 26, 2018, Defendants entered into a General Counsel Representation Agreement with the Debtor, through MCO (the "Agreement"). A copy of the Agreement is attached hereto as **Exhibit A.**

57. Pursuant to the Agreement, the Debtor, though MCO, was obligated to pay Defendants the following amounts:

    a. $60,000.00 no later than September 17, 2018;

    b. $25,000.00 no later than October 17, 2018;

      c.      $85,000.00 no later than February 29, 2019.

58. On or about September 17, 2018, the Debtor transferred at least $60,000.00 to the Defendants (the "Goodwin Transfer").

59. The Goodwin Transfer was a prepayment for services to be rendered by the Defendants.

60. Alternatively, the Goodwin Transfer was a payment to the Defendants for past due legal services.

61. Upon information and belief, payments totaling at least $110,000.00 pursuant to the Agreement were paid to Defendants either prior to the Juravin Petition Date or after the Juravin Petition Date.

62. The Defendants continued performing legal services for Debtor after the Debtor's Bankruptcy Case was filed.

63. Defendants received payment, post-petition, for services rendered to the Debtor.

## COUNT I: ACTUAL FRAUD
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
(Against Defendants)

64. The Trustee realleges paragraphs 1 through 63 as if fully set forth herein.

65. This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(A) and 550, and Florida Statute §§ 726.105(1)(a) and 726.108.

66. Within four (4) years prior to the Juravin Petition Date, Debtor effectuated the Goodwin Transfer to or for the benefit of the Defendants.

67. The Goodwin Transfer was a prepayment of legal services to be rendered to the Defendants in the future.

68. The Goodwin Transfer was made with the actual intent to hinder, delay, or defraud

present and future creditors of the Debtor.

69. At the time of the Transfer, Debtor was insolvent or became insolvent shortly thereafter.

70. Debtor was insolvent at the time of the Goodwin Transfer in that his liabilities exceeded his assets.

71. The Goodwin Transfer is avoidable and should be avoided, pursuant to and under Fla. Stat. §§ 726.105(1)(a), 726.108, and 11 U.S.C. §§ 544(b)(1) and 548.

72. Under 11 U.S.C. § 550(a), the Trustee may recover the Transfer for the benefit of the estate, to the extent that the Transfer are avoided under 11 U.S.C. §§ 544 and 548 and FUFTA.

73. There is at least one creditor holding an unsecured claim under 11 U.S.C. § 502 who would have standing to bring a claim under FUFTA.

WHEREFORE, the Trustee demands a judgment against Defendants, jointly and severally, as follows: (i) that the Goodwin Transfer to Defendants was fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550, and FUFTA; (ii) avoiding the Goodwin Transfer to Defendants and entering a judgment in favor of the Trustee for the value of the Goodwin Transfer pursuant to 11 U.S.C. § 550, plus pre-judgment interest from the date of the Transfer and costs of the suit; (iii) an attachment or other provisional remedy against the Goodwin Transfer or other property of the transferee in accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

**COUNT II: CONSTRUCTIVE FRAUD**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER**
**(Against Defendants)**

74. Plaintiff realleges paragraphs 1 through 63 as if fully set forth herein.

75. This is an adversary proceeding to recover fraudulent transfers pursuant to 11

U.S.C. §§ 544(b)(1), 548 (a)(1)(B) and 550, and Florida Statutes §§ 726.105(1)(b), 726.106(1), and 726.108.

76. Within four (4) years prior to the Petition Date, Debtor effectuated the Goodwin Transfer to and for the benefit of the Defendants.

77. Debtor did not receive reasonably equivalent value in exchange for the Goodwin Transfer.

78. At the time of the Goodwin Transfer, Debtor intended to incur, or reasonably should have believed he would incur, debts beyond his ability to pay them as they became due.

79. At the time of the Goodwin Transfer, Debtor was insolvent or became insolvent as a result of the Goodwin Transfer.

80. At the time of the Goodwin Transfer, Debtor's liabilities exceeded his assets.

81. The Transfer are avoidable under Florida Statute §§ 726.105(1)(b), 726.106(1), and 726.108, and 11 U.S.C. § 544(b)(1).

82. There is at least one actual holder of an allowed unsecured claim under 11 U.S.C. § 502 who would have standing to assert a claim for relief under FUFTA.

83. Pursuant to 11 U.S.C. § 550(a), the Trustee may recover the Goodwin Transfer for the benefit of the estate, insofar as the Goodwin Transfer is avoided under 11 U.S.C. §§ 544, 548 and FUFTA.

WHEREFORE, the Trustee demands judgment against the Defendants, jointly and severally, as follows: (i) that the Goodwin Transfer to the Defendants was fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548 (a)(1)(B) and 550, and FUFTA; (ii) avoiding the Goodwin Transfer to the Defendants and entering a judgment in favor of the Trustee for the value of the Goodwin Transfer, plus pre-judgment interest from the date of the Transfer and costs of the suit; (iii) an

attachment or other provisional remedy against the Goodwin Transfer or other property of the transferee in accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

### COUNT III: AVOID AND RECOVER PREFERENTIAL TRANSFER
### (Against Defendants)

84. Trustee realleges paragraphs 1 through 63 as if fully set forth herein.

85. This is a count to avoid and recover preferential transfers pursuant to §§ 547 and 550 brought based by the Trustee based on reasonable due diligence in the circumstances of the case and taking into account Defendants' known or reasonably knowable affirmative defenses.

86. This Count is pled in the alternative to Counts I-II herein in the event that there were outstanding fees or expenses to which the Goodwin Transfer was applied.

87. On or within 90 days before the Petition Date, that is, between August 2, 2018 and October 31, 2018, the Debtor made payments and transferred property, including by check, wire transfers, or otherwise to certain entities, including Defendants.

88. The Goodwin Transfer was to or for the benefit of Defendants during the Preference Period in an amount not less than $60,000.00.

89. The Goodwin Transfer was to or for the benefit of a creditor because the Goodwin Transfer either reduced or fully satisfied a debt then owed by Debtor to Defendants.

90. The Goodwin Transfer was for or on account of an antecedent debt owed by Debtor before the Transfer were made.

91. The Goodwin Transfer constituted a transfer of an interest of the property of Debtor.

92. Debtor was insolvent at all times during the Preference Period.

93. As a result of the Goodwin Transfer, Defendants received more than they would

have received if: (i) Debtor's case were under Chapter 7 of the Bankruptcy Code; (ii) the Goodwin Transfer had not been made; and (iii) the defendants received payment of their claims under the provisions of the Bankruptcy Code.

94. The Goodwin Transfer is avoidable and should be avoided, pursuant to 11 U.S.C. § 547.

95. Pursuant to 11 U.S.C. § 550, Trustee is entitled to avoid the full amount of the Goodwin Transfer, and recover, for the benefit of the estate, the amount of the Goodwin Transfer.

WHEREFORE, the Trustee demands a judgment against Defendants, jointly and severally, as follows: (i) that the Goodwin Transfer to Defendants were avoidable Transfer under 11 U.S.C. §§ 547 and 550; (ii) avoiding the Goodwin Transfer pursuant to 11 U.S.C. § 547; (iii) entering a judgment in favor of the Trustee for the value of the amount transferred pursuant to 11 U.S.C. § 550, plus pre-judgment interest from the date of the Goodwin Transfer and costs of the suit; and (iv) for any such further relief that this Court deems just and proper.

### COUNT IV: TURNOVER – 11 U.S.C. § 542
### (Against Defendants)

96. The Trustee adopts and realleges paragraphs 1 through 63 as if fully set forth herein.

97. This is an action for turnover pursuant to Section 542 of the Bankruptcy Code.

98. The Goodwin Transfer, in the amount of at least $60,000, to Defendants constitutes property of the Estate.

99. The Goodwin Transfer is subject to administration by the Trustee, including the payment of creditors.

100. Defendants have an obligation to preserve the status quo as of the Petition Date and to turn over the Goodwin Transfer to the Trustee.

WHEREFORE, the Trustee respectfully requests the Court to enter a judgment in favor of

the Trustee and against the Defendants, jointly and severally, (i) declaring that the Goodwin Transfer, of at least $60,000.00, be immediately delivered and turned over to the Trustee by the Defendants; (ii) granting money damages in the amount of Goodwin Transfers of at least $60,000.00, plus interest at the applicable federal statutory rate; (iii) requiring Defendants to provide an accounting pursuant to 11 U.S.C. § 542(a); and (iv) granting such other and further relief as may be just and proper.

### COUNT V: AVOID AND RECOVER POST PETITION TRANSFERS
### (Against Defendants)

101. Plaintiff realleges paragraphs 1 through 63 as if fully set forth herein.

102. This is an adversary proceeding to avoid and recover post-petition transfers pursuant to 11 U.S.C. §§ 549 and 550.

103. Upon information and belief, after the petition date, Debtor transferred funds to Defendants (the "Post-Petition Goodwin Transfers").

104. The Post-Petition Goodwin Transfers were not authorized by the Bankruptcy Code or by this Court.

105. The Post-Petition Goodwin Transfers involved property of the estate.

106. Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the Estate is permitted to the extent that the respective post-petition transfers are avoided under 11 U.S.C. § 549.

WHEREFORE, the Trustee demands judgment against Defendants, jointly and severally, as follows: (i) that the Post-Petition Goodwin Transfers were unauthorized and avoidable under 11 U.S.C. §§ 549 and 550, and FUFTA; (ii) avoiding the Post-Petition Goodwin Transfers and entering a judgment in favor of the Trustee for the value of the Post-Petition Goodwin Transfers, plus pre-judgment interest from the date of the post- petition transfers and costs of the suit; and

(iii) for any other and further relief that this Court deems just and proper.

Dated October 4, 2021.

/s/Bradley M. Saxton
Bradley M. Saxton, Esquire
Florida Bar No. 0855995
bsaxton@whww.com
Lauren M. Reynolds, Esquire
Florida Bar No. 112141
Lreynolds@whww.com
**Winderweedle, Haines, Ward & Woodman, P.A.**
Post Office Box 880
Winter Park, FL 32790-0880
(407) 423-4246
(407) 645-3728 (facsimile)
Attorneys for Dennis D. Kennedy, Trustee

-and-

/s/*James D. Ryan*
James D. Ryan, Esquire
Florida Bar No. 0976751
jdr@ryanlawgroup.net
lauren@ryanlawgroup.net
**Ryan Law Group, PLLC**
636 U.S. Highway One, Suite 110
North Palm Beach, FL 33408
Main: (561) 881-4447   Fax: (561) 881-4461
Special Counsel to Dennis D. Kennedy, Trustee